# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DONTRELL AHMAD LEFLORE'EL,

                                Plaintiff,

v.                                                      Case No. 11-CV-897-JPS

OFFICER BOUCHONVILLE and
PETER ERICKSEN,

                                Defendants.                        ORDER

_____

The plaintiff, Dontrell Ahmad LeFlore'El ("LeFlore'El"), a Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and was allowed to proceed *in forma pauperis*. He claims that, while incarcerated at the Green Bay Correctional Institution ("GBCI"), Officer Travis Bouchonville ("Bouchonville") sexually assaulted him and used excessive force against him in violation of the Eighth Amendment to the United States Constitution. LeFlore'El also claims that Bouchonville issued him a retaliatory conduct report based on the incident. He further claims that GBCI Security Director Peter Ericksen ("Ericksen") retaliated against him by informing LeFlore'El he would seek criminal charges against him for complaining about one of Ericksen's officers. The defendants have filed a motion for partial summary judgment for failure to exhaust administrative remedies and a motion for summary judgment on the merits. These motions are ready for resolution and will be addressed herein.

1.       Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be determined or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2.      Defendants' Motion for Partial Summary Judgment - Exhaustion

2.1      Factual Background[1]

The Wisconsin Department of Corrections ("DOC") maintains an Inmate Complaint Review System to afford inmates a process by which grievances may be expeditiously raised, investigated, and decided. LeFlore'El submitted one offender complaint, GBCI-2005-30606, to the

---

[1] Facts are taken from Defendants' Proposed Findings of Fact and Plaintiff's Proposed Findings of Fact.

institution complaint examiner's ("ICE") office relating to this lawsuit. He submitted GBCI-2005-30606 on October 1, 2005, and it was received by the ICE's office on October 5, 2005. LeFlore'El complained:

> This complaint is being filed in accordance with the DOC 310 and PLRA (Prison Litigation Reform Act). And it should be understood as an exhaustion of my administrative remedy.
>
> This complaint is about Officer Bouchonville inappropriately searching me before going to my recreation in new seg! Officer Bouchonville groped my testicles in an inappropriate manner. This made me very upset and on the way back from rec I became very cantankerous. And ended up having a physical confrontation with Officer Bouchonville. After being inappropriately fondled by Bouchonville, I felt violated and sexually assaulted! I want this matter thoroughly investigated!

(Francois Aff. ¶ 11, Ex. 1002 at 10.)

As part of GBCI-2005-30606, on October 17, 2005, LeFlore'El submitted a written statement clarifying that the reference to a "physical confrontation" was not an allegation that Bouchonville used excessive force against him. He states in relevant part:

> On the way back from rec I was again escorted to my room by Bouchonville and another officer. I told Bouchonville I heard you went in my room while I was outside, what did you take? He said any extra contraband or linen that your [sic] not supposed to have. As I approached my cell I realized he took both sets of my headphones and my food I had saved from dinner. I asked Bouchonville if I could at least have my food and one of my headphones back. He said no. I said so you trying to feel on me and take all my shit? He said you know you not supposed to have that shit are you going to let me tether you to the door or not? Then I head butted Officer Bouchonville. The officer fell back and ran. The other officer grabbed me from behind and took me down. Other officer

> came and Lt. Ski let me see a nurse. I sustained a cut over my
> left eye. The nurse patch me up and then I was placed on
> control status.

(Francois Aff. ¶ 11, Ex. 1002.)

On October 17, 2005, ICE Jodene Perttu ("Perttu") interviewed LeFlore'El regarding GBCI-2005-30606. During this interview, Perttu told LeFlore'El that he would be charged with "Lying about Staff" if investigative staff determined that the complaint against Bouchonville was not true. She explained that the Warden's Office would review, investigate, and resolve his complaint against Bouchonville. Perttu, in her capacity as ICE, recommended the following on GBCI-2005-30606:

> Inmate complains that during a pat search Officer Bouchonville
> groped his testicles.
>
> I spoke with the complainant and Administrative Directive
> 11.6 was explained to him along with the implications of
> violating DOC 303.271 (Lying about Staff). He was also
> informed that because the investigative process is regulated by
> state law and collective bargaining agreements, which protect
> the privacy and due process rights of staff, no further
> information will be given to the complainant. He chose to
> pursue the complaint and wrote a detailed description of the
> events he claimed to have transpired. As such, based on the
> sensitive nature of this issue, it is being forwarded to the
> Warden for further investigation and no further action will be
> taken by this office.

(Francois Aff. ¶¶ 11, 13, Ex. 1002 at 2.) The Reviewing Authority, Warden William Pollard ("Pollard"), dismissed with modification GBCI-2005-30606, on October 21, 2005. He noted that the investigation was complete.

LeFlore'El appealed Pollard's decision to the Corrections Complaint Examiner's ("CCE") office. On October 31, 2005, John Ray, in his capacity as CCE, recommended as follows:

> Because the allegations raised concerned alleged work rule violations, the complaint was investigated consistent with Administrative Directive AD 11.6. That was done in order to protect the contractual and personnel privacy rights of staff. For that reason, the complainant will not be provided additional information on any action that may have been taken. Noting the warden's direct involvement in the process, I am confident the concerns were thoroughly investigated and that the institution response to the claims was consistent with the verified evidence. Accordingly, it is recommended this complaint be dismissed on appeal with no further modification.

(Francois Aff. ¶¶ 11, 16, Ex. 1002 at 5.) On October 31, 2005, the Reviewing Authority, Rick Raemisch, accepted the CCE's recommendation to dismiss GBCI-2005-30606.

On September 29, 2005, Supervising Officer Michael Delvaux ("Delvaux") decided to refer the September 27, 2005, incident to the Brown County Sheriff's Department, as an alleged battery by LeFlore'El against Bouchonville. On November 16, 2005, LeFlore'El was charged in Brown County Case Number 05-CF-1152 with Battery by Prisoner based on the incident. Ultimately, the Brown County District Attorney's Office dropped the criminal charge.

LeFlore'El did not file any offender complaints alleging that Bouchonville used excessive force against him on or around September 27, 2005. LeFlore'El also did not file any offender complaints alleging that Ericksen informed him that Ericksen would be seeking charges for trying to bring down one of his officers or that he was referred for criminal prosecution in retaliation for complaining about an officer.

### 2.2 Analysis

The defendants contend that LeFlore'El's excessive force claim against Bouchonville and his retaliation claim against Ericksen should be dismissed for failure to exhaust administrative remedies because he never filed administrative grievances with regard to those claims. According to the defendants, the only complaint LeFlore'El filed regarding his claims in this case was GBCI-2005-30606 in which he alleged that Bouchonville fondled his testicles during the pat search. LeFlore'El contends that administrative remedies were not available for his retaliation claim because Ericksen threatened him. He also contends that his physical confrontation with Bouchonville which forms the basis of his excessive force claim was addressed in GBCI-2005-30606. LeFlore'El further contends that the Inmate Complaint Review System ("ICRS") is not an "appropriate forum" to resolve serious allegations against staff.

The Prison Litigation Reform Act (PLRA) provides in pertinent part that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including

deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The ICRS within the Wisconsin prison system is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). Before an inmate may commence a civil action, the inmate is required to exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the CCE. Wis.

Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

In this case, it is undisputed that the only offender complaint LeFlore'El filed with respect to his claims was GBCI-2005-30606. LeFlore'El contends that, in addition to exhausting his sexual assault claim, GBCI-2005-30606 should also be considered to exhaust his excessive force claim against Bouchonville. However, the grievance specifically states that LeFlore'El is complaining about the sexual touching: "This complaint is about Officer Bouchonville inappropriately searching me before going to my recreation in new seg." (Francois Aff. ¶ 12, Ex. 1002.) Although GBCI-2005-30606 references a "physical altercation" with Bouchonville on the way back to his cell from recreation, this is not the focus of the grievance. The ICE Report confirms that the ICE interpreted GBCI-2005-30606 as a grievance about the sexual assault allegations before recreation, not the "physical altercation" after his recreation period. Additionally, LeFlore'El's October 17, 2005 supplement to GBCI-2005-30606 states that he head-butted Bouchonville on the way back to his cell from recreation; there is no mention of Bouchonville using force against LeFlore'El. Based on these factors, GBCI-2005-30606 could not reasonably be construed to also be complaining that Bouchonville used excessive force against him. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (to exhaust a claim, an administrative grievance must alert prison officials of the nature of the wrong for which redress is sought); *see also* Wis. Admin. Code § DOC 310.09(1)(e) (ICRS inmate complaint shall contain "only one issue per complaint, and shall clearly identify the issue").

The court next turns to whether LeFlore'El exhausted administrative remedies with regard to his retaliation claim against Ericksen. LeFlore'El contends that administrative remedies were not available to him because Ericksen threatened him on two occasions. *See Kaba v. Stepp*, 458 F.3d 678, 684-85 (7th Cir. 2006). First, he avers that on November 8, 2005, during a discussion about the September 27, 2005 incident with Ericksen at LeFlore'El's cell, Ericksen told LeFlore'El that he was aware he was trying to bring criminal charges against Bouchonville. Ericksen stated to LeFlore'El: "You try to bring one of mine down and I'll bring you down," and he went on to explain how he was going to make sure that LeFlore'El got what was coming to him by ensuring he got criminal charges brought against him. (LeFlore'El Aff. ¶ 5.) Second, LeFlore'El avers that on January 5, 2006, while he was confined on Observation Status, Ericksen approached the front of the cell and gloated and taunted him about being criminally charged with Battery by Prisoner. During this exchange, Ericksen confirmed his role in ensuring that LeFlore'El was criminally charged for the incident. (LeFlore'El Aff., ¶ 10; *see also* Townsend Aff. ¶ 1.)

Ericksen denies making such statements to LeFlore'El. He also contends that LeFlore'El's allegations are contradicted by the record because prison records do not show that Ericksen was on the segregation unit on November 8, 2005, or January 5, 2006. If a high ranking prison official enters the unit, such as the warden or security director, it is typically recorded in the Sergeant's Office Log Book. The Log Book does not indicate that Ericksen was on the segregation unit on either date. Moreover, the affidavit of inmate John Townsend ("Townsend"), which is cited to support LeFlore'El's assertion that Ericksen threatened him on January 5, 2006, is also contradicted by the record. Townsend claims that he overheard a

conversation between LeFlore'El and Ericksen on January 5, 2006, because both inmates were on observation status in cells next to one another. However, on January 5, 2006, Townsend was housed in Segregation Cell 303. Segregation Cell 618 is at the beginning of the 500 Wing, opposite of the Control Center. Townsend's Segregation Cell 303 would have been approximately fifty feet away from LeFlore's Segregation Cell 618, with the Control Center blocking the vision in between.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Here, a reasonable juror could not believe LeFlore'El's version of the events because the record blatantly contradicts it. *Id.*

In any event, it is undisputed that on September 29, 2005, Delvaux, and not Ericksen, made the decision to bring criminal charges against LeFlore'El. This decision was made before LeFlore'El even filed his offender complaint against Bouchonville, and before both instances of alleged retaliation by Ericksen. Thus, even if LeFlore'El had exhausted his retaliation claim against Ericksen, the claim would fail on the merits. *See Kidwell v. Eisenhaur*, 679 F.3d 957, 965 (7th Cir. 2012) (setting forth standard for stating a prima facie case of retaliation).

Finally, LeFlore'El contends that when Perttu interviewed him during the investigation of GBCI-2005-30606, she informed him that the ICRS was not the appropriate form to resolve issues where serious allegations are raised against staff. According to LeFlore'El, this statement rendered administrative remedies unavailable to him and presumably was the reason

he did not file grievances concerning his excessive force claim against Bouchonville and his retaliation claim against Ericksen.

Perttu denies making such a statement but contends the dispute is immaterial because after she allegedly made the statement, LeFlore'El completed the exhaustion process in GBCI-2005-30606 by filing an appeal to the CCE. In addition, he filed offender complaints related to staff misconduct (but unrelated to his claims in this case) on October 20 and 27, 2005. (Francois Aff. ¶ 11, Exs. 1001, 1003.) Here, the record shows that, based on LeFlore'El's conduct, administrative remedies were available to him after the alleged statement by Perttu.

The undisputed facts demonstrate that LeFlore'El failed file an offender complaint with regard to his excessive force claim against Bouchonville and his retaliation claim against Ericksen. Thus, he failed to exhaust administrative remedies and these claims will be dismissed.

3.      Defendants' Motion for Summary Judgment on the Merits

      3.1      Factual Background[2]

At all times material to this action, LeFlore'El was confined at GBCI, a maximum-security institution located in Green Bay, Wisconsin. Bouchonville was employed by the DOC as a correctional officer at GBCI at all times relevant. Ericksen is the security director at GBCI.

Delvaux has been employed by the DOC as a Supervising Officer 2 (Captain) at GBCI since February 2, 1997. His duties include the security, custody, and control of inmates at GBCI. Delvaux also supervises correctional officers and sergeants. Alan Faicco ("Faicco") is a correctional

---

[2] This section is taken from the Defendants' Proposed Findings of Fact and the Plaintiff's Proposed Findings of Fact.

officer at GBCI and his duties include the security, custody, and control of inmates. Timothy Greil ("Greil"), who is currently a correctional sergeant at GBCI, was employed as a correctional officer at all times relevant.

### 3.1.1   Pat Searches

Pursuant to Wis. Admin. Code DOC 306.17(1), a "personal search," also known as a "pat search," means a search of a person, including, but not limited to, the clothing, frisking the body, and an inspection of the mouth. Inmate searches are critical to the security of an institution. Inmate searches are a means to identify and confiscate contraband possessed by inmates, prevent contraband from being moved from one location to another, prevent the introduction of contraband from outside the institution, and to identify any evidence of an assault, self-inflicted injury, or disfigurement on the part of inmates. Contraband is a direct threat to the safety of staff, inmates, and the institution as a whole. Weapons can be used to threaten, injure, or kill staff or inmates and they may be an inducement to cause a disturbance which threatens everyone in the institution.

The personal search, or pat search, while fully clothed, is the most common and fastest type of search. It is also less invasive than other types of searches, such as strip searches and body cavity searches. Before a search is conducted, staff inform the inmate that a search is about to occur, the nature of the search, and the place where the search is to occur.

A proper pat search is performed as follows: using both hands in a bladed position, meaning all fingers straightened and together, the correctional staff member pats over the inmate's body starting at the back of the head, following a direct course and searching the inmate from the head and working their way down the inmate's body. The inmate is patted down, with the correctional staff member going over all surface area of the inmate's

body, including neck, arms, back, torso, "thumbing the inmate's waistband," which means searching the area between the belt line or waistband and the inmate's waist, using enough pressure to enable the correctional staff member to feel any hidden contraband. The pat search continues down both legs. Again, with both hands still in the bladed position, and palms facing the inner thigh, the correctional staff member feels back up the inmate's legs, as far up into the groin area as possible. Either the blade or the back of the correctional staff member's hand will inevitably touch the inmate's genitals. If the blade or back of the hand does not touch the genitals, then the correctional staff member is probably not performing the search correctly. The inmate's buttocks are patted over as well, using enough pressure to enable the correctional staff member to feel any hidden contraband. The entire surface of the body must be patted, including up into the groin area and along the back seam of the pants, because contraband can sometimes be something very small, such as drugs or a small sharp object which could be used as a weapon. While conducting a pat search, correctional staff explain to the inmate in a casual tone what they are doing during the pat search.

Pursuant to policy and practice, inmates in the GBCI Segregation Unit are pat searched every time they are brought out of their cell. Pat searches are a necessary part of the security procedures within a prison.

### 3.1.2 Inmate Escorts

When an inmate in segregation at GBCI was removed from his cell in September of 2005, the following procedure was used. Officers approach the cell with the trap closed and attach a tether restraint to the d-ring in the door frame. The inmate then approaches the trap door in the cell facing forward and places his hands out the trap. The officers ensure that nothing is in the inmate's hand and then apply and secure wrist restraints. The inmate is

connected to the cell door frame through the tether restraint which is connected to the inmate's wrist restraints.

The inmate then backs out of the cell and kneels just outside the door. One officer applies leg restraints to the inmate as the other officer(s) maintain observation and hands-on control of the inmate. Once fully restrained, the officers order and assist the inmate to a standing position. One officer maintains observation and hands-on control while the other officer conducts a pat search. Hands-on control is maintained so that the inmate does not fall while in restraints. During the pat search, the officer who is not conducting the pat search can see what the officer performing the pat search is doing.

After the pat search, the tether restraint is removed and the inmate is escorted to his destination. The officers ensure the inmate faces forward at all times during the escort. The normal protocol is for several officers to work in teams of at least two to escort up to twelve inmates to the outdoor recreation cages. There are twelve outside recreation cages in the GBCI Segregation Unit and recreation sessions last at least 90 minutes.

After an officer places an inmate in the recreation cages, the officer does not stay outside to supervise the inmate. Inmates in recreation cages are supervised by security cameras and the officer in the watch tower. A correctional officer from the unit typically checks in on the inmates at recreation after about an hour. Correctional staff frequently utilize the time that inmates are at recreation to conduct cell searches of those inmates' cells.

3.1.3    September 27, 2005

On September 27, 2005, LeFlore'El was housed in the GBCI Segregation Unit and that afternoon he was escorted to recreation. Bouchonville was working in the GBCI Segregation Unit on September 27, 2005, but he does not recall whether he escorted LeFlore'El to recreation that

day. If he did, either Bouchonville, or the other escorting officer, would have pat searched LeFlore'El at his cell front prior to the escort.

Bouchonville has conducted pat searches of LeFlore'El prior to September 27, 2005. The parties dispute the nature of the previous pat searches. The parties also dispute what happened during the September 27, 2005 pat search, and the dispute will be addressed *infra*.

Bouchonville searched LeFlore'El's cell while he was at recreation and found two extra sets of headphones in the cell. He removed them because inmates in segregation are only allowed one pair of headphones. Bouchonville does not remember if he removed any other contraband items from LeFlore'El's cell.

Faicco and Bouchonville escorted LeFlore'El from recreation back to his cell, number 317. Greil observed Bouchonville and Faicco escort LeFlore'El to his cell. When they arrived at the cell, LeFlore'El would not allow Bouchonville to tether him to the door. According to the incident report, LeFlore'El then lowered his head and lunged at Officer Bouchonville, causing Bouchonville's head to hit the wall or door of the cell. Bouchonville's head hit the cell door or cell wall with enough force to cause him to see stars and become dizzy. Faicco immediately used reactive force, directed LeFlore'El to the ground, and ordered him to stop resisting. Segregation staff then came to the scene to provide assistance to Faicco.

After being head-butted, Bouchonville immediately left the area. He did not participate in the effort to regain control of LeFlore'El. It is protocol for the correctional staff member who is the source of an inmate's anger to leave the area while other staff members try to regain control of that inmate.

Once staff regained control of LeFlore'El, Nurse Sanchez examined him in the HSU. LeFlore'El had a cut on his left eyebrow that appeared to

have resulted from making contact with Bouchonville's teeth when he struck Bouchonville with his head. LeFlore'El was then escorted to cell number 305 and placed on control status. As a result of the incident, Bouchonville received a cut on his upper lip and had a headache that lasted the remainder of the day.

### 3.1.4    September 27, 2005 Incident Reports

An Incident Report is a means of communicating information or reporting serious and/or unusual incidents. The reports, which are prepared to inform institution, division, and department administrators of these incidents, only document factual information regarding what occurred and how staff responded to the incident.

On September 27, 2005, Bouchonville wrote Incident Report 1021211 to document what occurred when LeFlore'El attacked him. That same day, Faicco wrote Incident Report 1021209 describing the incident and Geicco wrote Incident Report 1021210 describing the same. Incident Report numbers 1021209, 1021210, and 1021211 do not indicate that LeFlore'El complained that Bouchonville conducted an inappropriate pat search of LeFlore'El, sexually assaulted him during the pat search, or inappropriately touched his genitals or buttocks. The incident reports also do not indicate that LeFlore'El requested to speak to a security supervisor when he was in the recreation pens nor do they state that he indicated that he would be filing an offender complaint against Bouchonville, or contacting the district attorney.

Bouchonville does not recall LeFlore'El complaining on September 27, 2005, that he inappropriately pat searched him, nor does he recall LeFlore'El asking to speak to a supervisor. Bouchonville also does not recall LeFlore'El stating that he was going to file an offender complaint against him. While

Bouchonville and Faicco were escorting LeFlore'El from recreation to his cell, Faicco did not hear him complain that Bouchonville conducted an inappropriate pat search of him or sexually assaulted him during the search.

Acting as administrative captain, Delvaux reviewed Incident Report 1021211 on September 28, 2005, and recorded under "Further Action Taken by Security Director" that "CR [conduct report] written. Inmate needs to be treated w/caution as he has shown he can assault staff even while in restraints." (Mohr Aff. ¶ 6, Ex. 1003; Delvaux Aff. ¶ 12.) Delvaux sent copies of the incident report to the warden, deputy warden, security director, security chief, and segregation lieutenant. On September 28, 2005, Delvaux also reviewed Incident Report 1021210. He wrote "additional information to IR #1021211" under the "Further Action Taken by Security Director" section of the incident report. Delvaux sent a copy of the incident report to the warden, deputy warden, security director, security chief, and segregation lieutenant. (Mohr Aff. ¶ 6, Ex. 1005; Delvaux Aff. ¶ 13.) On September 29, 2005, Delvaux reviewed Incident Report 1021209 and in the "Further Action Taken by Security Director" section of the incident report, Delvaux wrote "additional information regarding battery by inmate on staff member. Inmate issued CR [conduct report]. Battery to be referred to Brown County Sheriff's Dept." (Mohr Aff. ¶ 6, Ex. 1004; Delvaux Aff. ¶ 14.)

3.1.5   Conduct Report #1753845

On September 28, 2005, Bouchonville wrote Conduct Report #1753845, charging LeFlore'El with battery in violation of Wis. Admin. Code § DOC 303.12. Under Description of Incident, Bouchonville wrote:

On the above date and time Officer Faicco and I, Officer Bouchonville were escorting inmate Leflore #392296 to cell #317 after recreation. When we approached cell #317 Leflore became very angry due to the fact I searched his cell and retrieved two extra sets of headphones. When we got to his cell I secured one end of the tether to the door, but inmate Leflore would not allow me to secure the other end to the D-ring on the restraint set. As I explained to him he was only allowed one set of headphones inmate Leflore lowered his elevation and lunged at me. His shoulders hit me in the chest and his head hit me in the mouth which cut my upper lip and caused my head to hit off the wall. Officer Faicco immediately gained control of Leflore and directed him to the ground. Segregation staff responded. Inmate Leflore was examined by Nurse Sanchez then escorted to cell #305 and placed in control status without further incident.

(See Schueler Aff. ¶ 6, Ex. 1006; Bouchonville Aff. ¶ 52.)  Conduct Report #1753845 was given to LeFlore'El on September 30, 2005.

### 3.1.6  Referring Inmate Battery for Prosecution

When a battery or an assault occurs at GBCI, the Office of the Security Director is responsible for referring the matter to the Brown County Sheriff's Department for investigation and prosecution.  The security director, investigative lieutenant, or administrative captain makes the referral. Inmates who assault, batter, and injure staff members are always referred out to the Brown County Sheriff's Department for investigation.  Because of this, the administrative captain or investigative lieutenant do not need to confer with Ericksen before referring an inmate battery against staff to the sheriff's department.  As security director, Ericksen would be made aware of the referral to the law enforcement agency.

When a referral for investigation is made to the Brown County Sheriff's Office, the security director's office puts together a packet of relevant documents. After receiving the referral, the Brown County Sheriff's Department would come to the institution to pick up the packet compiled by the security director's office and possibly conduct an investigation.

The decision to refer LeFlore'El's September 27, 2005 battery of Officer Bouchonville to the Brown County Sheriff's Department was made on September 29, 2005, by Delvaux.

There is a record of LeFlore'El's defense attorney for Brown County Case No. 05-CF-1152 submitting three letters from LeFlore'El to the Brown County District Attorney on March 31, 2006, requesting the prosecution of correctional officers at GBCI. The three letters were dated by LeFlore'El October 12, 2005, October 18, 2005, and February 15, 2006. LeFlore'El's letter self-dated October 12, 2005, only discusses an incident with a Sergeant Lade and a trap door; it makes no reference to Bouchonville, inappropriate touching during a pat search, or the incidents of September 27, 2005. LeFlore'El's self-dated October 18, 2005 letter states it is regarding "two incidents and two officers assaulting" him. It states "I was assaulted and injured by one officer and sexually assaulted by another officer." (Bresette Aff. of June 22, 2012 ¶ 3, Ex. 1012.) This letter gives no further details regarding these allegations and does not mention Bouchonville.

On November 16, 2005, LeFlore'El was charged with Battery by Prisoners, in violation of Wis. Stat. § 940.20(1) in Brown County Case Number 05-CF-1152, based on his attack of Bouchonville at GBCI on September 27, 2005. The criminal case was dismissed on prosecutor's motion following a disposition hearing held on April 10, 2006. The hearing was originally scheduled to discuss a letter sent to the Court by LeFlore'El's

defense attorney requesting to enter a plea of not guilty by reason of mental disease or defect on behalf of LeFlore'El to the charge of battery by a prisoner. At this hearing, the State moved to dismiss the charges against LeFlore'El based on the competency issues of LeFlore'El and because Bouchonville had contacted the district attorney and informed them that he was out of state on active duty with the military and would likely remain so for quite a while.

### 3.2 Analysis

#### 3.2.1 Sexual Assault Claim

The defendants contend that Bouchonville should be granted summary judgment on LeFlore'El's constitutional sexual abuse claim because LeFlore'El has not met the objective or subjective component of an Eighth Amendment claim. They also contend that Bouchonville has qualified immunity because there was no constitutional violation and, even assuming LeFlore'El's constitutional rights were violated, the violation was not clearly established at the time. In response, LeFlore'El contends that Bouchonville's sexually harassing pat search violated his Eighth Amendment rights and that Bouchonville is not entitled to qualified immunity.

The Eighth Amendment prohibition on cruel and unusual punishment bars prison authorities from unnecessarily and wantonly inflicting pain on inmates. *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). In the context of searches of prisoners, only searches that are maliciously motivated, unrelated to institutional security, and lack a legitimate penological justification violate the Eighth Amendment. *Id.* The infliction of pain on prisoners without any legitimate penological justification "always violates contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment."

*Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Therefore, "infliction of pain that is totally without penological justification is per se malicious." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (internal quotation marks omitted).

The parties dispute what happened when Bouchonville pat searched LeFlore'El on September 27, 2005. According to LeFlore'El, prior to the search, Bouchonville asked him if he would like his pat search "light or heavy." During the search, Bouchonville grabbed LeFlore'El's penis and squeezed his testicles as if Bouchonville were trying to derive arousal. At the conclusion of the pat search, Bouchonville gave a "half double pat/half squeeze" of LeFlore'El's buttocks and stated, "there, was that bad?" (Leflore'El Aff. ¶ 3.) After Bouchonville squeezed, grabbed and groped LeFlore'El's penis, testicles, and buttocks, LeFlore'El felt embarrassed, afraid, and humiliated.

Bouchonville avers that while at GBCI, he always performed proper pat searches of inmates. He further avers that he has never asked an inmate whether the inmate liked a pat search "light or heavy" or make any other inappropriate comments towards inmates regarding pat searches. Bouchonville also avers that has never fondled, grabbed, groped, cuffed, squeezed, or pinched an inmate's genitals or buttocks during a pat search or otherwise. According to Bouchonville, the only contact he has had with an inmate's genitals or buttocks during a pat search has been with the back of his bladed hand in accordance with the proper pat search procedure.

Although the defendants contend that LeFlore'El's claim does not satisfy the objective component of the Eighth Amendment claim, Seventh Circuit case law is to the contrary. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (reversing grant of summary judgment where plaintiff

asserted that guard gratuitously fondled his testicles). "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington*, 695 F.3d at 643 (citations omitted).[3]

The defendants also contend that LeFlore'El has not met the subjective component of an Eighth Amendment claim because Bouchonville does not remember if he escorted LeFlore'El to segregation on September 27, 2005, and because Bouchonville always conducted proper pat searches of inmates. The necessity of pat searches in prison is not disputed. If, as the defendants contend, Bouchonville's search of LeFlore'El was "proper" because Bouchonville always conducted inmate pat searches appropriately, then there would not be a deliberate violation of LeFlore'El's constitutional right and no basis for suit. *See id.* However, LeFlore'El asserts that Bouchonville fondled and grabbed him, beyond what is done in routine pat searches. Under these circumstances, the court cannot conclude that there was an absence of improper motivation.

---

[3] The court notes that the defendants cited two Eastern District of Wisconsin cases in the brief-in-chief in support of their argument that Le'Flore'El does not state a constitutional violation, *Washington v. Hively*, Case Number 10-CV-4, 2012 WL 602751 (E.D. Wis. 2012) and *Rivera v. Drake*, Case Number 09-CV-1182 (E.D. Wis. 2012). However, both of these cases have been reversed, *see Washington v. Hively*, 695 F.3d 641 (7th Cir. 2012) (detainee's allegation that guard touched his private parts to humiliate him or to gratify guard's sexual desires was sufficient to state claim); *Rivera v. Drake*, 2012 WL 6040734 (7th Cir. Dec. 5, 2012) (reasonable jury could infer that by inserting his thumb between prisoner's buttocks during a pat down search, officer intended to humiliate prisoner and therefore violated the Eighth Amendment).

Finally, the defendants contend that they are entitled to qualified immunity. Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *See Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, ___ U.S. ___ 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, as set forth *supra*, there is a factual dispute concerning whether Bouchonville violated LeFlore'El's constitutional rights during the search. The court thus turns to whether the constitutional right was clearly established in September 2005. In determining whether a right was "clearly established" at the time of an action, the court looks at the right violated in a "particularized" sense, rather than "at a high level of generality." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[T]here is no need that 'the very action in question [have] previously been held unlawful.'" *Safford Unified Sch. Dist.*

*v. Redding*, 557 U.S. 364, 377 (2009) (modification in original) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Outrageous conduct is obviously unconstitutional. *Id.* "But even as to action less than an outrage, 'officials can still be on notice that their conduct violates established law…in novel factual circumstances.'" *Id.* (modification in original) (quoting *Hope v. Pelzer*, 536 U.S. at 741). The basic question is whether the state of the law at the time that Bouchonville acted gave him reasonable notice that his actions violated the Constitution. The focus of the inquiry must be the "objective legal reasonableness" of the official's action. *Wilson*, 526 U.S. at 614 (internal quotation marks omitted). The official must have "fair warning" that his conduct is unconstitutional. *Hope*, 536 U.S. at 739-40 (internal quotation marks omitted).

Here, LeFlore'El claims that before the 2005 pat search, Bouchonville asked him if he liked his pat searches "light or heavy." During the pat search, Bouchonville grabbed his penis and squeezed his testicles as if trying to derive arousal. After the search, he gave LeFlore'El a double pat/squeeze and stated, "there, was that bad?"

The defendants contend that the cases cited in his brief in which similar or more egregious allegations did not amount to an Eighth Amendment violation demonstrate that Bouchonville would not have been

on notice that this alleged conduct violated the Constitution.[4]  However, in 2003, the Court of Appeals for the Seventh Circuit reversed the dismissal of a complaint for failure to state a claim where a male prisoner alleged that the defendants subjected him to a sexually humiliating strip search in the presence of female guards who were there as spectators, not to perform any penological function.  *Calhoun*, 319 F.3d at 940.  The appeals court concluded that the complaint allegations, if true, could only lead to the conclusion that the prison guards conducted the strip search in a manner designed to demean and humiliate the prisoner.  *Id.*

---

[4] *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997); *Berryhill v. Schirro*, 137 F.3d 1073, 1076 (8th Cir. 1998); *Jackson v. Madery*, 158 Fed.Appx. 656, 661 (6th Cir. 2006)(finding claim that a correctional officer rubbed and grabbed plaintiff's buttocks in a degrading and humiliating manner was not sufficiently serious to rise to Eighth Amendment violation); *Allen v. Johnson*, 66 Fed.Appx 525 (5th Cir. 2003)(finding that touching an inmate in a sexual manner during a pat search does not state an Eighth Amendment claim); *Washington v. Harris*, 186 Fed.Appx. 865, 865-66 (11th Cir. 2006)(finding allegations that an officer had grabbed inmate's genitals, kissed him on the mouth, and threatened to perform oral sex on him failed to establish a constitutional violation and amounted to simple assault and battery); *Hughes v. Smith*, 237 Fed. App'x 756, 759 (3rd Cir. 2007)(holding that the inmate had not alleged an Eighth Amendment violation where the correctional officer allegedly grabbed the inmate's testicles through his clothing during a single pat-down frisk); *Joseph v. Federal Bureau of Prisons*, 232 F.3d 901, 2000 WL 1532783 at *1-2 (10th Cir. 2000)(holding that allegations that the officer touch inmate in several times and exposed her breasts to him were not objectively serious enough to constitute a constitutional violation); *Williams v. Anderson*, No. Civ. A. 03-3253, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004); (finding no Eighth Amendment violation where a prison guard grabbed a pre-trial detainee's buttocks, exposed his genitals to the inmate, and made crude sexual remarks); *Rivera v. Drake*, Case No. 09-CV-1182, 2012 WL 589272 *5 (E.D. Wis. Feb. 22, 2012)(finding allegation that officer inserted fingers between inmate's buttocks during pat search was not objectively sufficiently serious); *McEachin v. Bek*, No. 06-cv-6453, 2012 WL 1113584, at *6 (W.D.N.Y. Apr. 2, 2012)(holding that one incident when plaintiff was sexually touched without his consent was not severe enough to state an Eighth Amendment claim).

While the facts of this case differ from *Calhoun* in that Bouchonville conducted a pat search, not a strip search, of LeFlore'El, this case also involved genital fondling which does not appear to have been at issue in *Calhoun*. The court concludes that a correctional officer should have been on notice in 2005 that squeezing an inmate's testicles during a pat search for apparent sexual gratification, together with sexually charged language, violated the inmate's constitutional rights. Based on the foregoing, Bouchonville is not entitled to qualified immunity and the Court cannot dismiss LeFlore'El's sexual assault claim.

### 3.3.2 Retaliation Claim

The defendants contend that Bouchonville should be granted summary judgment on LeFlore'El's retaliation claim. To establish a prima facie case of retaliation, an inmate must produce evidence that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *See Kidwell v. Eisenhaur*, 679 F.3d 957, 965 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (same). If the inmate satisfies these elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *See Kidwell*, 679 F.3d at 965; *Greene*, 660 F.3d at 979.

LeFlore'El claims that Bouchonville issued him a "bogus, fabricated conduct report" to discourage him from filing an inmate grievance. He alleges that this occurred after LeFlore'El told Bouchonville at the recreation cages that he wanted to see a security supervisor, that he would be

submitting an inmate grievance against Bouchonville, and that he would be notifying the Brown County District Attorney.

As an initial matter, LeFlore'El's summary judgment brief does not respond to Bouchonville's argument that he is entitled to judgment on this claim. LeFlore'El thus abandoned the claim, and summary judgment in Bouchonville's favor is proper as to the claim. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same); *Donelson v. City of Chicago*, 272 F. Supp. 2d 717, 726 (N.D. Ill. 2003) (treating plaintiff's harassment claim as abandoned where she merely contended that she was harassed, but provided no legal arguments in support of the claim and "ma[de] no serious efforts to respond to the [defendant's] argument against it" in her summary judgment opposition brief). *See also*, Civil L. R. 7(d) (E.D. Wis.).

In any event, Bouchonville wrote Conduct Report 1753845 charging LeFlore'El with battery on September 28, 2005. Bouchonville's description of the portion of the September 27, 2005 incident where he was escorted back to his cell, LeFlore'El got upset upon discovering that Bouchonville had removed contraband from the cell, and LeFlore'El head-butted Bouchonville, matches LeFlore'El's description in his October 17, 2005, supplement to GBCI-2005-30606. Thus, Bouchonville issued LeFlore'El a conduct report for conduct that LeFlore'El himself acknowledges occurred. Under these circumstances, a reasonable jury could not conclude that Bouchonville retaliated against LeFlore'El. *See Greene*, 660 F.3d at 979.

4.      Summary

In sum, the defendants' motion for partial summary judgment based on failure to exhaust administrative remedies will be granted.  LeFlore'El's excessive force claim against Bouchonville and his retaliation claim against Ericksen are subject to dismissal without prejudice on that basis.  *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

The defendants' motion for summary judgment on the merits will be granted in part and denied in part.  LeFlore'El's retaliation claim against Bouchonville will be dismissed.  However, a genuine issue of material fact exists as to LeFlore'El's sexual assault claim and the defendants' motion will be denied with respect to that claim.  Therefore,

IT IS ORDERED that the defendants' motion for partial summary judgment for failure to exhaust administrative remedies (Docket #25) be and the same is hereby GRANTED.  LeFlore'El's excessive force claim against Bouchonville and his retaliation claim against Ericksen are DISMISSED without prejudice.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (Docket #75) be and the same is hereby GRANTED in part and denied in part as described herein.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge